UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| KWESI MUHAMMAD,<br>Plaintiff,<br>v.<br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br>Defendant. | Case No. 23-cv-02242-AMO (PR)<br><br>**ORDER GRANTING DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 42 |

## I. INTRODUCTION

Plaintiff Kwesi Muhammad filed this civil action in the Sacramento County Superior Court, *Muhammad v. California Department of Corrections and Rehabilitation*, Case No. 34-2023-00335812, stemming from alleged violations at the Correctional Training Facility ("CTF"). Dkt. 1. He alleges federal causes of action under Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").[1] Dkt. 1 at 5-7. In his complaint, Muhammad only names the California Department of Corrections and Rehabilitation ("CDCR") as a defendant. *Id.* at 2.[2] He seeks monetary damages. *Id.* at 11.

Before the Court is Defendant's second motion for summary judgment.[3] Dkt. 42. Defendant contends it is entitled to judgment as a matter of law on Muhammad's disability

[1] Title II of the ADA (42 U.S.C. § 12101 *et seq*.) and Section 504 (as amended and codified in 29 U.S.C. § 794(a), *preempted on other grounds*, Aviation and Transportation Security Act, 49 U.S.C. § 44935) prohibit discrimination on the basis of disability in the programs, services or activities of a public entity.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[3] On February 23, 2026, the Court found that Defendant was not entitled to summary judgment based on the failure to exhaust administrative remedies at that time, and denied its first motion for summary judgment without prejudice to filing a dispositive motion on the merits. *See* Dkt. 38.

discrimination claims under the ADA and Section 504. Dkt. 42 at 1. Muhammad filed an opposition to Defendant's second motion for summary judgment, and Defendant filed a reply. Dkts. 43, 44.

This Order assumes familiarity with the Court's June 14, 2024 Order, which provided the case's background and noted that, when liberally construed, the complaint appeared to state cognizable disability discrimination claims against Defendant for violating Muhammad's rights under the ADA and Section 504. *See* Dkt. 18 at 1-2.[4]

Having read and considered the papers submitted, and being fully informed, the Court **GRANTS** Defendant's second motion for summary judgment.

## II. FACTUAL BACKGROUND

### A. Muhammad's Version

Muhammad alleges that he is an individual with qualifying disabilities because of a "failed left knee medial meniscus tear repair and left foot hammertoe correction." Dkt. 1 at 6. Muhammad alleges that, in April 2021, when Defendant discontinued its practice of permitting only certain individuals with disabilities the ability to shower during specified times, it discriminated against him as a disabled individual in violation of the ADA and Section 504. *Id.* at 9-10. Four months later, around September 2021, Defendant reinstituted the practice as it existed before its April 2021 change. *Id.* at 8.

The Court previously found that, liberally construed, these allegations stated cognizable disability discrimination claims against Defendant for violating Muhammad's rights under the ADA and Section 504.

### B. Defendant's Version

#### 1. Relevant Medical Treatment to Muhammad

On July 29, 2019, Muhammad underwent an arthroscopic knee procedure to repair a torn

[4] The June 14, 2024 Order also granted Defendant's motion to strike Muhammad's first amended complaint ("FAC") upon determining that Muhammad did not intend to file the FAC here because "the FAC ha[d] in its caption the case number of his case proceeding in the United States District Court for the Eastern District of California, and because its allegation d[id] not relate to the claims at bar in this suit." Dkt. 18 at 3 (citing Dkt. 12 at 1).

meniscus and some breakdown of cartilage under his kneecap. Decl. Grotke Supp. Def.'s Merits Based Mot. Summ. J. ("Grotke Decl.") ¶ 10 & Ex. F. According to health records, the procedure was successful. *Id.* The discharge instructions by the orthopedic surgeon Dr. Jeffrey Jett, a non-party, did not address climbing stairs and did not address any housing-related needs for Muhammad beyond recommending assistance within 24 hours of the procedure because of the anesthesia. *Id.*

On August 20, 2019, Muhammad was seen by Dr. Jett to follow up on the knee procedure. *Id.* ¶ 11 & Ex. G. The relevant health record documented that Muhammad stated that he "no longer experienced catching or locking of the left knee." *Id.* Muhammad added that he had "difficulty when he is not on the bottom bunk or with ambulating up several flights of stairs." *Id.* Dr. Jett noted that Muhammad was "improving" following the procedure, and that his "[s]urgical portal sites [we]re well healed." *Id.* Thus, Dr. Jett concluded that Muhammad no longer had a torn meniscus or breakdown of cartilage under the kneecap. *Id.* Dr. Jett's review of Muhammad's symptoms stated that Muhammad had no musculoskeletal issues, such as pain or decreased range of motion, and Dr. Jett documented that Muhammad was to "limit excessive ambulation with several flights of stairs." *Id.* The health record documenting this visit between Muhammad and Dr. Jett does not recommend that Muhammad be permanently housed in a ground floor cell and does not state that Muhammad would need a knee replacement. *Id.*

On January 27, 2020, Muhammad was seen by non-party Dr. Grotke. Grotke Decl. ¶ 12 & Ex. H. Dr. Grotke documented that Muhammad informed him that the orthopedic surgeon recommended that Muhammad be assigned to a ground floor cell. *Id.* Based on Muhammad's representation, Dr. Grotke completed an accommodations chrono identifying that Muhammad was to be assigned to ground floor housing. *Id.* ¶ 12 & Ex. I. Dr. Grotke documented that Muhammad said that he still had the ability to go up and down stairs, and thus Dr. Grotke did not assign Muhammad a CDCR Disability Placement Program ("DPP") Code, which is a code provided to prisoners with a verified disability. *Id.* ¶ 12 & Exs. A, H.; Decl. Freeman Supp. Def.'s Merits-Based Mot. Summ. J. ("Freeman Decl.") ¶ 6. Dr. Grotke documented that Muhammad was "without disability because he is able to get up and down stairs and able to get down on the floor if

United States District Court
Northern District of California

so directed by custody." Grotke Decl. ¶ 12 & Ex. H.

On April 21, 2021, Muhammad was seen another time by Dr. Grotke because Muhammad wanted a colon cancer screening. Grotke Decl. ¶ 13 & Ex. J. Muhammad did not reference any issues about his mobility. *Id.* Dr. Grotke observed Muhammad's gait and documented that it was normal. *Id.* During the examination, Dr. Grotke did not document any mobility-related concerns, and Muhammad did not raise any mobility-related concerns or other concerns associated with his knee. *Id.*

On June 30, 2021, Muhammad was seen again by Dr. Grotke because Muhammad wanted to discuss his reported wrist pain. Grotke Decl. ¶ 14 & Ex. K. Dr. Grotke documented that Muhammad reported that he stopped exercising because of pain in his wrist. *Id.* Dr. Grotke observed that Muhammad was "well appearing and comfortable," and that Muhammad did not reference any issues or complaints about his mobility or access to showers. *Id.* During this visit, Dr. Grotke did not document any mobility-related concerns, and Muhammad did not raise any mobility-related concerns or other concerns associated with his knee. *Id.*

**2. Access to Shower Facilities Between April-August 2021**

On April 21, 2021, non-party CTF Correctional Officer M. Zavala offered Muhammad the opportunity to use the shower facilities, including the ground floor showers, during the scheduled time the tier was released. Decl. Georgely Supp. Def.'s Merits Based Mot. Summ. J. ("Georgely Decl.") & Ex. N ("Muhammad's Dep.") 24:3-5. Officer Zavala informed Muhammad that he would not be released to shower after the 5:00 p.m. inmate count cleared as Muhammad had requested, but that Muhammad could access the shower facilities when he and the rest of the prisoners on Muhammad's tier were released to use the showers. *Id.* at 11:3-7. Muhammad claims that Officer Zavala told him that she "was not here to play prison politics" and that Muhammad could figure out when he should shower while his tier was released to use the shower facilities. Muhammad's Dep. 92:12-23. Muhammad did not accept Officer Zavala's offer to shower. *Id.* at 24:7-9.

Between April 21, 2021 through August 29, 2021, officers offered Muhammad the opportunity to access the shower facilities in his unit, which included ground floor showers. *Id.* at

43:10-12. They offered Muhammad the opportunity to use the showers every other day, which was the frequency with which officers offered showers to every prisoner on Muhammad's tier. *Id.* at 43:13-15. In response to each offer for him to use the showers, Muhammad said "no." *Id.* at 43:16-18.

On April 29, 2021, Muhammad mailed a letter to the warden at CTF regarding his issues with access to showers. Freeman Decl. ¶ 13 & Ex. D; Georgely Decl. & Ex. M. Muhammad wrote: "[o]n April 21, 2021, Officer Zavala informed me that she was no longer going to release ADA inmates after count cleared because if I wanted to shower I could do so when my tier was released for showers." Freeman Decl. ¶ 13 & Ex. D. Muhammad further stated that, even if he was not released to shower at his desired time, he could shower after "wait[ing] in the dayroom until all of the Southern Mexican and White inmates on my tier have showered first." *Id.* Muhammad did not state that he needed additional time to access or use the shower facilities. *See id.*

On May 19, 2021, Muhammad submitted a grievance, which was designated Grievance No. 119967. Dkt. 1 at 8. The grievance alleged that it had been a long-term practice for ADA-designated inmates with ground floor housing restrictions to be permitted to shower after the completion of the 5:00 p.m. inmate count. *See* Georgely Decl. Supp. Def.'s Exhaustion-Based Mot. Summ. J.[5] ("Previous Georgely Decl.") & Ex. C at 3 (Grievance No. 119967). It stated that prior to April 21, 2021, Muhammad was granted priority access to shower facilities after count completed. Previous Georgely Decl. & Ex. C at 1, 3. The grievance stated that, on April 21, 2021, Officer Zavala informed Muhammad and other "ADA inmates" that they were no longer going to be given priority access to shower facilities after count completed. *Id.* Muhammad claimed he could not safely shower with other inmates before the 5:00 p.m. count cleared because "the ground floor shower is used exclusively from 9:00 to 16:40 by White and Hispanic [Security Threat Group or] STG inmates." *Id.* Muhammad adds that "[d]ue to the history of violence between these STG members and African inmates, [he] has not been able to safely access the

[5] *See* Dkt. No. 30-10.

United States District Court
Northern District of California

ground floor shower since 4/19/2021 by reason of [his] disability . . . ." *Id.* at 3. However, he does not elaborate on how such a denial of priority access to showers was related to his disability, for example, he did not state that he needed additional time to access or use the shower facilities because of his alleged disability. *Id.* at 2.

On June 4, 2021, non-party CTF Correctional Sergeant Covarrubias interviewed Muhammad as part of the investigation into Muhammad's May 2021 grievance. Decl. Covarrubias Supp. Def.'s Merits-Based Mot. Summ. J. ("Covarrubias Decl.") ¶ 4. During the interview with Sergeant Covarrubias relating to the grievance, Muhammad stated that he did not want to shower with prisoners who were White or Mexican. *Id.* He further stated that "the floor officers could offer him the opportunity to access the shower facilities when other prisoners on his tier are offered the opportunity to shower." *Id.* Additionally, Muhammad stated that "if he did not want to shower with prisoners who were White or Mexican, he could wait to shower until the end of the allocated shower time." *Id.* Sergeant Covarrubias explained to Muhammad that showers are not segregated by race and that all showers in the housing unit are available for all prisoners to use during their assigned tier's allotted time to shower. *Id.* ¶ 5. Since Muhammad was assigned to a cell on the ground floor, Sergeant Covarrubias explained that Muhammad was to use the shower facilities when prisoners assigned to the ground floor were released to shower. *Id.*

On June 27, 2021, the Office of Grievances issued its decision on Grievance No. 119967. *See* Decl. Barss Supp. Def.'s Exhaustion-Based Mot. Summ. J. ("Barss Decl."),[6] Ex. B. According to the decision, prison officials investigated Muhammad's grievance. *Id.* at 1. The investigation revealed that Muhammad refused to use the first-floor shower because the showers were used by inmates of another race—not because Muhammad was denied equal access to the showers. *Id.* The Office of Grievances "disapproved" the grievance and stated that if Muhammad was dissatisfied with the decision, he could file an appeal with the Office of Appeals. *Id.* at 2.

On July 19, 2021, a classification committee hearing was conducted to confirm that Muhammad was properly classified within the prison system, including but not limited to the

[6] *See* Dkt. 30-13.

correct security level, work assignments, and access to programs. Freeman Decl. ¶ 11 & Ex. B. The committee documented that Muhammad had "No . . . DPP concerns," and it did not mention anything about Muhammad's access to showers. *Id.* The committee further documented that, during a pre-hearing interview, Muhammad "agreed with the proposed recommendation." *Id.*

On August 25, 2021, Muhammad received a response to his letter to the warden. Freeman Decl. ¶ 14 & Ex. E; Georgely Decl. & Ex. M. The institution's ADA Coordinator, whose duties and responsibilities included ensuring the institution complied with disability laws, prepared the response for the warden. Freeman Decl. ¶¶ 2-3, 14. The response outlined that a review of Muhammad's May 2021 grievance was conducted. *Id.* ¶ 14. The response stated that Muhammad "was afforded access to all programs, services and activities" and that he was "made aware by housing staff to follow the housing unit and tier shower schedule." *Id.* & Ex. E. The response stated that, during the investigation into the May 2021 grievance, it was discovered that Muhammad "refused to shower on the [ground floor] tier because other inmates of another race used the showers, not because [Muhammad was] denied equal access to showers." *Id.* The response confirmed Muhammad did not have a DPP code, was "housed appropriately," and as a "Dining Room Worker" had "access to the shower facilities after 12:00 pm." *Id.*

### 3. Relevant Procedure to Request Disability-Related Accommodations

Under Title 15 of the California Code of Regulations § 3999.394(c), prisoners "shall request an accommodation by using the process for requesting health care services or the process for requesting a disability accommodation." Cal. Code Regs. tit. 15, § 3999.394(c). A prisoner must follow this process to ensure prison officials are aware of the requested accommodation and that the request is reviewed and, if warranted, provided to the prisoner. Freeman Decl. ¶ 4. To request a disability-related accommodation, the prisoner submits the CDCR Form 1824 Reasonable Accommodation Request ("Form 1824"). *Id.* ¶ 5. The prisoner can also submit their request on the CDCR Form 7362 Health Care Services Request ("Form 7362"). *Id.* Once a prisoner submits their reasonable accommodation request, it is processed and reviewed by the institution's Reasonable Accommodation Panel, which specializes in evaluating whether a prisoner has a disability and what disability accommodation, if any, is necessary to ensure the

prisoner has equal access to prison services, programs, and activities. *Id.*

Prisoners who are determined to have a verified disability are assigned to the DPP and are assigned a DPP code, which indicates the type of disability they have. Freeman Decl. ¶ 6. A prisoner can request to be assigned a DPP code using the Form 1824. *Id.* ¶ 6. A prisoner's health care provider can assign a DPP code if they conclude the prisoner has a disability. *Id.* Assigned DPP codes are documented on a DPP verification form located in the prisoner's file. *Id.*

**4. Process for Providing Showers Effective August 23, 2021**

Effective August 23, 2021, prison officials implemented a process for providing showers to prisoners with certain disabilities. Freeman Decl. ¶ 15. These prisoners are part of the *Armstrong* class action.[7] *Id.* The process allowed prisoners with certain DPP codes to have priority access to shower facilities from 8:30-9:30 a.m. and from 5:30-6:30 p.m. to allow for additional time that may be required for these prisoners to move to, around, and from the shower area. *Id.* This process did not grant these prisoners exclusive use of showers. *Id.* Only prisoners with one of the listed DPP codes were included in this process. *Id.* Officers assigned to housing units were empowered to exercise their judgment in determining whether to permit a prisoner to use a shower during the priority times, as long as prisoners with a qualifying DPP code continued to have priority use of showers during this shower time. *Id.* ¶ 16.

**5. Muhammad's Disability Status in 2021**

In 2021, Muhammad did not have a DPP code, including any DPP code that would have entitled him to priority access to shower facilities. *Id.* ¶ 16 & Ex. A. According to his prison records, throughout that year, Muhammad was not a member of the *Armstrong* class action, was not a DPP participant, and did not have a DPP code with a verified disability. *Id.* ¶ 9. While at CTF, Muhammad did not submit any request for accommodation using either Form 1824 or Form

---

[7] *Armstrong v. Brown*, et al., N. D. Cal. No. C 94-2307 CW ("*Armstrong*"), is a class action concerning disability accommodations for prisoners and parolees in the CDCR. The *Armstrong* "Court Ordered Remedial Plan," as amended January 3, 2001 ("*Armstrong* Remedial Plan"), requires the CDCR "to ensure that prisoners and parolees with disabilities are accessibly housed, that they are able to obtain and keep necessary assistive devices, and that they receive effective communication regarding accommodations." *Armstrong v. Brown*, No. 94-2307 CW, Docket No. 1974 (Order filed Jan. 13, 2012).

7362 regarding his access to showers. Muhammad's Dep. 59:15-61:1, 61:16-21. Between April 21, 2021 and August 28, 2021, Muhammad did not inform any medical provider that he was being denied a shower or priority use of a shower. *Id.* at 93:21-24.

## III. DISCUSSION

### A. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The court is only concerned with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the court's task to scour the record in search of a genuine issue of triable fact. *Id*. If the nonmoving party fails to make the requisite showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

A district court may consider only admissible evidence in ruling on a motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002). In support of the second motion for summary judgment, Defendant has filed a declaration and exhibits from its attorney, Deputy Attorney General Christian Michael Georgely, as well as declarations and exhibits from Sergeant Covarrubias, Associate Warden C. Freeman, and Dr. Grotke. *See* Dkts. 42-1 – 42-18. Meanwhile, Muhammad's complaint and declaration are both

verified as they were signed under penalty of perjury. *See* Dkts. 1, 43-1. The Court will construe Muhammad's complaint and declaration as affidavits under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995). However, the Court will not construe Muhammad's opposition brief, not signed under penalty of perjury, as part of the evidentiary record.[8] Dkt. 43 at 15.

**B. Analysis**

Defendant seeks summary judgment on the ground that Muhammad cannot prove his disability discrimination claims under the ADA and Section 504. Dkt. 42 at 1. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations, an implementing regulation provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. *Weinreich v. Los Angeles Cnty. MTA*, 114 F.3d 976, 979 (9th Cir. 1997). To prove that a public program or service violated Title II of the ADA, the plaintiff must show: (1) the plaintiff is a qualified individual with a disability and otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (2) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such

---

[8] The Court notes that even if it considered Muhammad's allegations in his opposition to the extent such allegations are based on his personal knowledge and set forth specific facts admissible in evidence, *see Schroeder*, 55 F.3d at 460 & nn.10-11, the result below would not change.

exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 949 (9th Cir. 2017); *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1134 (9th Cir. 2001). All elements are required. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Essentially the same showing is required to state a cause of action under Section 504. *See Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 589-91 (1999); *Duvall*, 260 F.3d at 1135.

As the parties have not indicated any relevant difference between the ADA and Section 504 analyses for Muhammad's claims, the claims will be addressed together, as they frequently are. *See Duvall*, 260 F.3d at 1135. The Court examines each of the elements in turn.

**1. Qualifying Disability**

Defendant argues that Muhammad fails to establish the first element because he cannot show that he was a qualified individual with a disability during the relevant time period. *See* Dkt. 42 at 17-18. The Court agrees.

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1) (2009). Thus, in order to show that he qualifies for relief, Muhammad must show that one or more of his major life activities is, has been, or is perceived to be, impaired.[9]

Defendant introduced evidence that Muhammad's major life activities were not impaired during the relevant time period. Specifically, Muhammad's prison records document that, throughout 2021 and notwithstanding his 2019 knee procedure, he did not have a qualifying disability and CDCR had no record of a qualifying disability. *See* Freeman Decl. ¶¶ 6, 9, 10 & Ex. A; *see* Cal. Code Regs. tit. 15, § 3000 (listing disability definition in prison regulations). Instead, the record shows that Muhammad was not assigned a DPP code with a verified disability. *See* Freeman Decl. ¶¶ 6, 9-10 & Ex. A. Additionally, Muhammad's treating physician, Dr. Grotke, documented that after the knee procedure, Muhammad said that he still had the ability to go up

[9] Examples of major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Operation of major bodily functions also is a major life activity. *See id*. at § 12102(2)(B).

and down stairs, and thus Dr. Grotke did not assign Muhammad a DPP code. Grotke Decl. ¶ 12 & Exs. A, H.; Freeman Decl. ¶ 6. Dr. Grotke documented that Muhammad was "without disability because he is able to get up and down stairs and able to get down on the floor if so directed by custody." Grotke Decl. ¶ 12 & Ex. H. Furthermore, based on his subsequent encounters with Muhammad in April and June of 2021, Dr. Grotke continued to conclude that Muhammad had no disability. *See id.* ¶¶ 13-14 & Exs. J, K. Defendant has evidenced that Muhammad's major life activities were not limited, and in so doing, shifts the burden to Muhammad to "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Muhammad's complaint did not identify *any* activity that he is unable to perform, much less a major life activity. *See generally* Dkt. 1. Instead, Muhammad argued that he is an individual with qualifying disabilities because of a claimed "failed left knee medial meniscus tear repair and left foot hammertoe correction." *See id.* at 6. However, Muhammad did not have a disability that required an accommodation to access prison shower facilities and thus does not have a qualifying disability. *See Wallace v. Longano*, No. 3:19-cv-05330-RJB-JRC, 2020 WL 3669028, at *6, 13 (W.D. Wash. May 21, 2020) (holding that a prisoner who was provided a wheelchair to assist them when walking "long distances" was not disabled for purposes of analyzing whether the prisoner required access to a shower designated for "handicap" use). Moreover, in the course of the investigation into Muhammad's grievance, his statements evidence that his requested shower access arose from a desire to avoid showers with inmates of another race—not because of any disability. Covarrubias Decl. ¶¶ 4-5; Barss Decl., Ex. B.

Muhammad also argues that the ADA does not require him to request a disability accommodation using a specific form. *See* Dkt. 43 at 13. But this misses the point. The ultimate question is whether Muhammad had a disability that required an accommodation to access prison shower facilities. Defendant introduced evidence that Muhammad was not disabled within the meaning of the ADA and Section 504, *see generally* Freeman Decl. & Grotke Decl., and Muhammad has failed to rebut that evidence. Thus, Defendant is entitled to judgment as a matter of law because the undisputed material facts indicate that Muhammad has failed to meet the first element of showing he had a qualifying disability or that he was otherwise qualified to participate

in or receive the benefit of some public entity's services, programs, or activities. *See* Fed. R. Civ. P. 56(a).

**2. Exclusion from Participation in a Public Program**

Assuming for the sake of argument that Muhammad had a qualifying disability, Defendant further argues that it is entitled to summary judgment because Muhammad cannot establish that he was excluded from participating in a program based on lack of priority access to prison shower facilities reserved for inmates with qualifying DPP codes. Again, the Court agrees.

People with disabilities are entitled to "meaningful access" to services, programs, and activities. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016). Prison shower facilities are a covered program. *Clark v. California*, 739 F. Supp. 2d 1168, 1180 (N.D. Cal. 2010) (indicating showers are a public program under the ADA). Meaningful access guarantees people with disabilities "full and equal enjoyment" of a facility. *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (quoting 42 U.S.C. § 12182(a)). "An individual is excluded from participation in or denied the benefits of 'a public program if a public entity's facilities are inaccessible to or unusable by individuals with disabilities.'" *Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014) (quoting 28 C.F.R. § 35.149). A plaintiff must prove the defendant discriminated against them by making programs and activities unavailable to them when compared to people without a disability. *See Brown v. City of Los Angeles*, 521 F.3d 1238, 1241 (9th Cir. 2008). In the prison context, "opportunities" to access prison facilities must be provided to prisoners with disabilities "to the same extent that they are provided to all other detainees and prisoners." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010).

Here, Muhammad has repeatedly admitted that, throughout 2021, he could access shower facilities, and thus that Muhammad was not excluded from accessing shower facilities. *See* Freeman Decl. ¶ 13 & Ex. D; Covarrubias Decl. ¶ 4. Muhammad's own testimony is that despite regularly being offered the opportunity to access shower facilities, he declined and chose not to use the shower facilities. *See* Muhammad's Dep. 43:10-8. Thus, even if Muhammad could show that he had a qualifying disability, there is no material dispute of fact that he was given access to

United States District Court
Northern District of California

prison shower facilities. *See id.*

Specifically, the record shows that Muhammad has stated on at least three occasions that throughout 2021, he was routinely offered an opportunity to access shower facilities to the same extent they were provided to prisoner peers. *See* Muhammad's Dep. 24:3-6, 43:10-18; Freeman Decl. ¶ 13 & Ex. D; Covarrubias Decl. ¶ 4. First, during his deposition, Muhammad conceded that Officer Zavala offered him the opportunity to shower using the housing unit's shower facilities on April 21, 2021. Muhammad's Dep. 24:3-6. Muhammad, however, refused the offer. *Id.* at 24:7-9. Muhammad testified that between April 21, 2021 and August 29, 2021, officers routinely offered him the opportunity to use his unit's shower facilities. *Id.* at 43:10-12. Prison staff offered Muhammad the opportunity to use the unit's shower facilities every other day, which was the frequency with which every prisoner on Muhammad's tier was offered the opportunity to use the shower facilities. *Id.* at 43:13-15. Instead of accepting the repeated offers to use the shower facilities, Muhammad refused these offers. *Id.* at 43:16-18. Therefore, the record shows that Muhammad was not excluded from access to shower facilities. *See Armstrong*, 622 F.3d at 1068 (stating that "opportunities" to participate in prison programs must be provided to prisoners with disabilities "to the same extent that they are provided to all other detainees and prisoners").

Second, in his April 29, 2021 letter to the warden, Muhammad admitted he could access the shower facilities during the time when other prisoners on his tier were released to shower. *See* Freeman Decl. ¶ 13 & Ex. D. Muhammad stated that if he accepted the offers from prison officials to shower when the other prisoners on his tier were also given the opportunity to shower, he could use the ground floor shower facilities after "wait[ing] in the dayroom until all of the Southern Mexican and White inmates on [his] tier have showered first." *Id.* Therefore, the evidence shows that Muhammad was given access to the shower facilities on the same terms as other prisoners. *See Armstrong*, 622 F.3d at 1068.

Third, during his June 4, 2021 interview with Sergeant Covarrubias, Muhammad stated that if he did not want to shower with prisoners who were of a different race, he could use the ground floor shower facilities at the end of the allocated shower time. *See* Covarrubias Decl. ¶ 4. Instead, Muhammad chose not to shower during the time allocated for him and the prisoners on

his tier to access the shower facilities. *Id.* This evidence also shows that Muhammad was not excluded from access to the shower facilities. *See Armstrong*, 622 F.3d at 1068.

At its core, Muhammad's case concerns his alleged lack of priority access to the showers reserved for inmates with qualifying DPP codes, which was after the 5:00 p.m. inmate count cleared. In his declaration, Muhammad claims that prior to April 21, 2021, he was being released to shower after count cleared, and that this "practice allowed [him] to safely access the ground-floor shower without climbing stairs and without placing [him]self in conflict with the established shower custom in F-wing." Muhammad Decl. ¶ 10. On April 21, 2021, when Officer Zavala stopped releasing Muhammad to shower after count cleared, Muhammad refused to shower before count cleared and "explained that showering on the ground-floor with White and Southern Mexican inmates created safety concerns because of the existing prison shower custom." *Id.* ¶ 13. Muhammad claims his continued request to be released to shower after count cleared was not a request for "special treatment," and instead it was a request for "prison staff [to] continue the same practice that had already allowed [him] safe and meaningful access to showers." Muhammad Decl. ¶¶ 10-11. Muhammad does not argue that he lacked access to a handicapped shower or needed extra time to shower due to his alleged disability, but only that Officer Zavala's actions on April 21, 2021 "did not provide [him] safe or equal access to showers . . . ." *Id.* ¶ 15. Thus, the record shows that Muhammad had routine and regular offers from prison officials to access shower facilities *before* the 5:00 p.m. count cleared, but he chose not to do so during the relevant time frame from April to August 2021. Muhammad Dep. 24:3-6, 43:16-18. Muhammad's refusal to shower unless given priority access to showers and released in a particular order with other inmates with qualifying DPP codes (i.e., after the 5:00 p.m. count cleared) does not support an ADA claim. *See Simmons v. Rosales*, No. 2:19-cv-01097-CKD P at *2-3 (E.D. Cal. Feb. 25, 2020) (holding that prisoner-plaintiff's ADA claim challenging a prison official's decision to allow other prisoners to use shower facilities before plaintiff fails to state cognizable claim). In light of the evidence put forward by the Defendant, the burden shifts to Muhammad to identify a material dispute of fact. He does not. Therefore, the undisputed material facts establish that Muhammad was not excluded from accessing a public program, specifically access to shower

facilities, and he cannot establish the second element of an ADA claim. Thus, Defendant is entitled to judgment as a matter of law on this basis as well. *See* Fed. R. Civ. P. 56(a).

* * *

Based on the evidence presented, Defendant has shown that there is no genuine issue of material fact with respect to Muhammad's disability discrimination claims under the ADA and Section 504. *See Celotex Corp.*, 477 U.S. at 323. Muhammad has failed to point to specific facts showing that there is a genuine issue for trial, *id.* at 324, or identify with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279. Accordingly, Defendant's second motion for summary judgment is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Defendant's second motion for summary judgment is **GRANTED**. Dkt. 42. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: September 22, 2026

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**